AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Northern District of California | |
|---|---|---|
| Name (under which you were convicted):<br><br>Tajiri Turner Jr. | | Docket or Case No.: |
| Place of Confinement : CSP Solano | Prisoner No.:<br><br>AZ4881 | |
| Petitioner (include the name under which you were convicted)<br><br>TAJIRI TURNER JR. | v. | Respondent (authorized person having custody of petitioner)<br><br>ROBERT NEUSCHMID, Warden |
| The Attorney General of the State of: | | |

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Superior Court of California County of San Mateo

    (b) Criminal docket or case number (if you know):   SC082805A

2.  (a) Date of the judgment of conviction (if you know):   08/02/2020

    (b) Date of sentencing:   08/02/2020

3.  Length of sentence:   144 years to life

4.  In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:   Robbery, kidnap for robbery, prior

    convictions, use of weapon

6.  (a) What was your plea? (Check one)

    ☑ (1)   Not guilty        ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty            ☐ (4)   Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:    California Court of Appeal, First District

(b) Docket or case number (if you know):    A148401

(c) Result:    Reversed/Affirmed

(d) Date of result (if you know):   06/12/2018

(e) Citation to the case (if you know):    People v. Tajiri Turner Jr., A148401, unpublished

(f) Grounds raised:

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

AO 241 (Rev. 09/17)

    (4) Date of result (if you know): _____

    (5) Citation to the case (if you know): _____

    (6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

_____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1) Name of court:    San Mateo Superior Court _____

            (2) Docket or case number (if you know): _____

            (3) Date of filing (if you know):    03/07/2019 _____

            (4) Nature of the proceeding:    Habeas corpus _____

            (5) Grounds raised:    Newly discovered evidence _____

_____

_____

_____

_____

_____

_____

_____

_____

            (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

            ☐ Yes    ☑ No

            (7) Result: _____

AO 241 (Rev. 09/17)

        (8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

        (1) Name of court:    Califonria Court of Appeal, First District

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding:    Habeas corpus

        (5) Grounds raised:   Newly discovered evidence

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes    ☑ No

        (7) Result: _____

        (8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

        (1) Name of court:    Califonria Supreme Court

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know):    07/02/2020

        (4) Nature of the proceeding:    Habeas corpus

        (5) Grounds raised:   Newly discovered evidence

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☐ Yes    ☑ No

(2) Second petition:    ☐ Yes    ☑ No

(3) Third petition:    ☐ Yes    ☑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

Denial of habeas corpus is not subject to appeal under California law.

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE:  See attached Memorandum of Points and Authorities

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached Memorandum of Points and Authorities

(b) If you did not exhaust your state remedies on Ground One, explain why:    Remedies exhausted

AO 241 (Rev. 09/17)

(c)   **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:   Raised issue on habeas corpus

<br>

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Habeas corpus

Name and location of the court where the motion or petition was filed:   Califonria Supreme Court

Docket or case number (if you know):   S262334

Date of the court's decision:   07/29/2020

Result (attach a copy of the court's opinion or order, if available):   Not available

<br>

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☐ Yes   ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

<br>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND TWO:**          See attached Memorandum of Points  and Authorities

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached Memorandum of Points and Authorities

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?      ☐   Yes      ☑   No

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:   Raised on habeas corpus as facts outside

    the record were relied on in support of claim.

(d)     **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☑  Yes      ☐   No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:      Habeas corpus

    Name and location of the court where the motion or petition was filed:   California Supreme Court

    Docket or case number (if you know):   S262334

AO 241 (Rev. 09/17)

Date of the court's decision:     07/29/2020

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

California Supreme Court is highest state court.  No appeal is allowed on denial of habeas corpus.

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : _____

_____

_____

**GROUND THREE:**     See attached Memorandum of Points and Authorities

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached Memorandum of Points and Authorities

_____

_____

_____

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:   Remedies exhausted

(c)   **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

   (2) If you did not raise this issue in your direct appeal, explain why:   Resort to facts outside record on appeal

   required the issue be raised on habeas corpus.

(d)   **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   ☑ Yes   ☐ No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition:   Habeas corpus

   Name and location of the court where the motion or petition was filed:   California Supreme Court

   Docket or case number (if you know):   S262334

   Date of the court's decision:   07/29/2020

   Result (attach a copy of the court's opinion or order, if available):

   (3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

   (4) Did you appeal from the denial of your motion or petition?   ☐ Yes   ☑ No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

There is no appeal of denial of habeas corpus under california law.

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**   N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)   **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed:    N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                                    ☐ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?                          ☐ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

   (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court
          having jurisdiction?   ☑ Yes       ☐ No
          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not
          presenting them: _____

          _____

          _____

   (b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which
          ground or grounds have not been presented, and state your reasons for not presenting them:

          All grounds have been exhausted _____

          _____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction
       that you challenge in this petition?        ☐  Yes     ☑ No
       If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues
       raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy
       of any court opinion or order, if available. _____

       _____

       _____

       _____

       _____

       _____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for
       the judgment you are challenging?        ☑ Yes     ☐ No
       If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues
       raised.     California Court of Appeal, First District, Case No. A160053; direct appeal from criminal

       proceeding(sentencing issue). _____

       _____

       _____

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    Gerritt Rutgers, attorney at law, 600 Callerton St., Suite 300,

Redwood City, CA 94603

(b) At arraignment and plea:    Same

(c) At trial:        Same

(d) At sentencing:    Same

(e) On appeal:        Eric Weaver, attorney at law, P. O. Box 6294, Albany, CA 94706

(f) In any post-conviction proceeding:        Gerritt Rutgers(resentencing)

(g) On appeal from any ruling against you in a post-conviction proceeding:    Eric Weaver(same as above)

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        ☐ Yes    ☑ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

The petition is timely. The direct appeal initially affirmed the conviction, but reversed, in part, the

sentence on 8/13/18.  Resentencing occured on March 29, 2019. On July 23, 2018, during the pendency

of direct appeal, petitioner discovered new evidence(the affidavit of John Sanford).  A habeas petition

was filed in the San Mateo Superior Court, with the new evidence claim on November 14, 2018. The

habeas petition was filed within 120-days of the California Court of Appeal decision denying the direct

AO 241 (Rev. 09/17)

appeal.  The state habeas corpus was prosecuted through the successive levels of review in the State

courts.  The California Court of Appeal, nor the California Supreme Court, decision cited to any of the

cases the court cites when denying the petition as untimely.  Accordingly, the petition, properly filed, was

denied on the merits in both, the California Supreme Court, and Court of Appeal.  The petition filed in this

Court, is, therefore, timely.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation
under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   Order an evidentiary hearing be held, make findings

of fact, conclusions of law, and find the conviction must be reversed.

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on    08/04/2020    (month, date, year).

Executed (signed) on    08/04/2020    (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

Tajiri Hamsi Turner Jr. AZ4881

C. S. P. Solano

P. O. Box 4000

Vacaville,  CA  95696-4000

In Pro Per/

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

In re

TAJIRI HAMSI TURNER, JR.,

CASE NO._____

On

**MEMORANDUM OF POINTS**

HABEAS CORPUS

**AND AUTHORITIES**

_____/

## ADDENDUM TO PETITION FOR WRIT OF HABEAS CORPUS

MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Tajiri Hamsi Turner Jr., in pro per, petition this Court for a writ of habeas

corpus, and by this verified  alleges as follows:

1

I.

Petitioner is unlawfully incarcerated and restrained at California State Prison Solano, Vacaville, California by Robert Neuschmid, Warden, pursuant to a judgment pronounced by the San Mateo County Superior Court, Case No. SC082805A.

II.

On February 9, 2016, petitioner was charged by amended information with three counts of kidnap for robbery(Pen. Code section 209, subd(b)(1) - Counts One, Four, and Six. (1 CT 13, 16, 18.) Petitioner was charged with three counts of second degree robbery(Pen. Code sec. 212.5, subd. (c)) - Counts Two, Five and Seven. (1 CT 2, 17, 19.) Petitioner was further charged with two counts of kidnapping(Pen. Code sec. 207, subd. (a) - Count 9 and 10. (1 CT 22, 24.) He was additionally charged with one count of dissuading a witness(Pen. Code sec. 136.1, subd. (c)(1)) - Count Three. (1 CT 15.) Finally, petitioner was charged with one coiunt of violently resisting an officer.(Pen. Code sec. 69) - Count Eight. (1 CT 20.)

III.

All the offenses except resisting arrest(Count Eight) were alleged to be serious felonies within the meaning of Penal Code sections 1192.7, subd. (c) and 667.5, subd. (c).

IV.

The amended information also alleged that petitioner had suffered two prior strikes for robbery as to all counts except Count 8. (1 CT 21.) As to Counts One - Seven, the same two prior robbery convictions were alleged to be serious felony prior convictions pursuant to Penal

2

Code section 667, subd. (a)(1). (1 CT 14-20.)  As to all of the offenses except resisting arrest(Count Eight), petitioner was alleged to have been armed with a deadly or dangerous weapon pursuant to Penal Code section 12022.1, subd. (b)(1).

## V.

All of the offenses were alleged to have been committed while petitioner was on parole pursuant to Penal Code section 1203.085, subds. (a) & (b).  Petitioner was also alleged to have served two prior prison terms pursuant to Penal Code section 667.5, subd. (b). (2 CT 21-22.)

## VI.

On February 8, 2016, the Superior Court granted  petitioner's motion for acquittal of two of the counts of kidnap for robbery(Counts One and Six). (1 CT 126-127.)

## VII.

On February 11, 2016, the jury convicted  petitioner of Counts Two - Five, Seven and Nine - Ten.  It found all of the enhancement allegations to be true. The jury was unable to reach a verdict as to the resisting a police officer charge(Count Eight.) (1 CT 129-130.)  Count Eight was ultimately  dismissed in the interest of justice. On February 19, 2016, all of the prior conviction allegations were found to be true after a court trial. (1 CT 131-132.)

## VIII.

On March 18, 2016, petitioner was sentenced to a total term of 144 years to life as follows.  Count Four, kidnap for robbery(Pen. Code sec. 209, subd. (b)(1), was designated the principal term.  Petitioner was sentenced to 25 years to life plus one year consecutive for using

3

a weapon(Pen. Code sec. 120221.1, subd. (b)(1) and a consecutive term of five years each for

the two serious felony priors(Pen. Code sec. 667, subd (a)).

## IX.

The same term was imposed consecutively for Count Three, dissuading a witness(Pen.

Code sec. 136.1, subd. (c)(1); and Counts Nine and Ten, simple kidnap(Pen. Code sec. 207,

subd(a)).  The sentences for Counts Two, Five and Seven, second degree robbery(Pen. Code sec.

212.5, subd. (c), were stayed pursuant to Penal Code section 654 as were the terms for the

prison priors pursuant to Penal Code section 667.5, subd. (b).  (1 CT 136-144.)

## X.

On June 1, 2018, this Court issued its unpublished opinion in Mr. Turner's direct appeal

in Case No. 148401. This Court reversed the simple kidnapping convictions in Count Nine and

Ten. (Opinion at 13.) It also ordered that petitioner be awared 84 additional days of

presentence credit. (Ibid.)

## XI.

On March 29, 2019, petitioner was resentenced after remand. (2 RT 63.)  The court

declined to exercise its discretion to strike one or more strikes pursuasnt to (People v.

Romero(1996) 13 Cal. 4th 497. (2 RT 89-91.) The Court then dismissed Counts Nine and Ten and

the attendant special allegations as ordered by this Court. (1 CT 183; 2 RT 90-91.)

## XII.

The trial court resentenced petitioner to the exact same term 144 years.  Count Four,

4

kidnap for robbery(Pe. Code 209, subd. (b)(1), was designated the principal term.  Petitioner was sentenced to  25 years to life plus one year consecutive for using a deadly or dangerous weapon(Pen. Code sec. 12022.1, subd. (b)(1) and a consecutive  term of five  years each for the two serious felony priors(Pen. Code sec. 667, subd. (a)). (1 CT 183; 2 RT 92.)

## XIII.

The same term was imposed consecutively for Count Two, robbery(Pen. Code sec. 212.5, subd(c)); Count Three, dissuading a witness(Pen. Code sec. 136); and Count Seven, robbery(Pen.Code sec.  212.5, subd. (c)). (1 CT 183; 2 RT 92-93.)

## XIV.

The same term was imposed for Count Five but then was stayed pursuant to Penal Code section 654. (1 CT 833; 2 RT 93.)  Forty years out of the 144 year sentence  are attributable to the trial court's discretionary decision to impose five year terms for the two serious felony priors(Pen. Code sec. 667, subd(a)) a total of eight times consecutively.

## XV.

Petitioner was awarded a total of 1669 days of credit for time served. (1 CT 184; 2 RT 94-95.) Petitioner's timely notice of appeal was filed on March 29, 2019. (1 CT 178.)

## XVI.

### THE FACTS ON WHICH RELIEF IS REQUESTED

Newly Discovered Evidence

5

On July 23, 2018, approximately 2 years after the trial on ther matter and while the direct appeal was pending, appointed appellate counsel Eric Weaver received an unsolicited declaration from John Sanford, an inmate at the California State Prison Solano. The declaration was hand written. Mr. Sanford stated in the declaration that on September 3, 2014, he received a message from Tajiri Turner ("Petitioner"), on the communication app Snapchat. Mr. Turner ("Petitioner") informed him that his  vehicle was not operating correctly and wanted to know if Mr. Sanford could check with an associate of his who was mechanically inclined, to see if the associate would take a look at the vehicle and possibly diagnose the problem. Mr. Sanford agreed and within an hour Mr. Turner("Petitioner") arrived at Sanford's location in San Francisco. Prior to Petitioner's arrival at Sanford's location, Mr. Sanford gathered his backpack and a few other items he thought he might need. When Petitioner and Sanford left the Army Street location , Sanford was driving the vehicle. After running a few errand, Sanford dropped Petitioner off at CSM at approximately 10:30 a.m.. Sanford advised Petitioner that he would take the vehicle to his associate and  would return for him at approximately 12:00 p.m. (See Affidavit of John Sanford, paragraph 2, hereto, exh-A.)

Sanford further states in his declaration that after dropping Petitioner off at CSM instead of going directly to his associate to have the vehicle checked out, he drove to the Verizon store on El Camino Real in San Mateo a store he had cased a few days earlier for possibly a robbery.  He had planned to rob the sgore with a BB gun which is one of the items he put in his backpack prior to Petitioner's arrival to pick him up. Sanford states that as he entered the store he immediately observed the female Asian clerk who had been in the store on the earlier occasion working alone. Sanford locked the door of the store as he entered to prevent

6

anyone from entering behind him. Once inside the store, Sanford used artifice to lure the clerk to the back of the store where he took the BB gun from his waistband and using it to simulate a firearm, ordered the clerk to empty the phones he wanted into the backpck. The clerk, looking frighten, complied with Sanford's demand. However, moments later, seeing an opening the clerk managed to escape by running out the backdoor of the store. (See Affidavit of John Sanford, paragraph 3, hereto, exh.-A.)

Sanford further states in his declaration that he became alarmed when the clerk managed to escape out of the backdoor and he immediately ran in the same direction which is where he had parked the vehicle. There were people outside as sanford ran to the vehicle so he hurriedly left the area and drove the vehicle into an alleyway near a pet fish store on El Camino Real in San Mateo. Before exiting the vehicle Sanford states that he removed the hat and hoodie which he was wearing and put them in a garbage bag and put the keys under the passenger seat. Sanford also states in the declaration that he left the BB gun and the phones obtained from the robbery in the v ehicle. (See Affidavit of John Sanford, paragraph 4, hereto, exh.-A.)

Sanford further states in his declaration that when he arrived back to San Francisco he sent Tajiri Turner("Petitioner") a message on Snapchat. The message was intended to be an apology, basically, telling Petitioner that he tried to be "slick" and did something and now the vehicle is "hot." Sanford never told Petitioner what he did only that the vehicle was parked in an alleway next to a pet fish store on El Camino Real in San Mateo. (See Affidavit of John Sanford, paragarph 5, hereto, exh.-A.)

Sanford further states in his declaration that approximately one week after he

7

committed the robbery of the Verizon store located at 1701 Gum Street,  San Mateo, CA 94402,

he learned that Tajiri Turner("Petitioner") had been arrested for the robbery as he was going to

retrieve his vehicle.  Sanford decided after much reflection, that he wanted to come clean, clear

his conscience and tell the truth about how he committed the Verizon store robbery  on

September 3, 2014. (See Affidavit of John Sanford, paragraphs 6, 7, 8, and 9, hereto, exh.-A.)

## The Impermissively Suggestive Police Identification Procedures

On September 3, 2014,  approximately 2 hours after the robbery of the Verizon store

located at 1701 Gum Street, the San Mateo police officers investigating the robbery at the store

got a call over the radio,  a public broadcast audible to the  store clerk and victim of the

robbery,  that the suspect was in custody. (See RT pp. 76-77.)  After the radio call that the

suspect was in custody, the police advised Ms. Men, the store clerk, and victim that the person

who robbed her had been captured, and that he was going to transport her to the location

where the suspect was being  detained so that she could make an identification of him.  (RT pp.

77-78.)  The victim had no questions for the police officer as he drove her to the location where

the person who had been taken into custody was being detained.  (RT p. 78.)

The victim testified at the preliminary hearing that the police was with her in the store

for about fifteen minutes when the  radio call came in and the officer told her  "They [caught]

the guy," and "We need you to make an identification." (RT  Preliminary Hearing, p. 35.)  The

identification of Tajiri Turner followed the suggestive statement made by the police.

## Post-Trial Communications With Trial Counsel

In his post-trial communications with representatives of Tajiri Turner trial counsel made

statements which indicate counsel were laboring under a conflict of interest when representing

petitioner at trial. Specifically, in an email sent to Daudi Turner, the uncle of the petitioner Tajiri

Turner, counsel wrote disapprovingly of the fact that more than 300K were spent on the

petitioner's defense. (See Email from Gerritt Rutgers, hereto, exh.-B.) Counsel implied in the

same email that petitioner withheld knowledge of the existence of evidence at the time of trial

only to later claim that he has newly discovered evidence. (Ibid.)  Counsel admitted in yet a

different, and separate email that he deliberately sabotaged a post-conviction investigation

effort of petitioner Tajiri Turner by contacting the investigator who was on retainer for $500,

and persuaded the investigator to return the fee and not conduct the investigation. (See Email

from Gerritt Rutgers, hereto, exh.-C.)  Counsel indicated that he thought petitioner got what

he deserved, considering the expense of his defense, and counsel's belief that petitioner

misdirected defense resources. (Ibid)  On November 4, 2019, although under retainer, after

being contacted by Gerritt A. Rutgers, the investigator who was retained by petitioner's

representative Erica Sorrells, did in fact return the fee and declined working on the case. (See

Emails from "stuart@halfsilver.com, hereto, exh.-D.)

In reply to an email sent to him by Daudi Turner, petitioner's uncle, where counsel is

accused of attempting to sabotage petitioner's post-conviction investigative efforts, counsel

does not deny the accusations but instead wanted to know how reporting him to the State Bar

helps the petitioner.  Counsel further wanted to know where was Daudi Turner when the

petitioner was going to trial.  Daudi Turner provided counsel information in his email which

coroborated petitioner's newly discovered evidence claim, and counsel expressed that the

evidence would have been helpful had it been made available at the time of trial. (See Email

from Gerritt Rutgers, hereto, exh.-E.)  Daudi Turner disclosed in his email to counsel that he was

part of a "crew" in 2008 who committed robberies very similar to those which Tajiri had been

accused of committing, and that he had personal knowledge that a member of the "crew" who

evaded prosecution in 2008 was responsible for the robbery of the Verizon store on September

3, 2014.  To this disclosure counsel responded by stating "Thank you for informing me you are

reporting me to the State Bar.  I also want to thank you for pointing out you have been involved

in robberies, as I am sure the State Bar will be interested in that."(See Email from Gerritt

Rutgers, hereto, exh.-F.)

### XVII.

Petitioner suffers from illegal restraint because newly discovered evidence of third

party culpability points unerringly to petitioner's factual innocence of the Verizon store robbery

occuring on September 3, 2014;

Petitioner suffers from illegal restraint as  the police used an impermissively suggestive

identification procedure,   when Detective Noa informed the victim in advance of the showup,

that the robber had been captured, and he was going to take her to the location to identify him;

the ensuing identification was tainted by the impermissively suggstive police procedure;

Petitioner suffers from illegal  restraint as his trial attorney Gerritt Rutgers rendered

constitutionally ineffective assistance; counsel failed to reasonably or adequately prepare a

defense of the case. He conducted an inadequate investigation and failed to follow up on

exculpatory evidence of third party confession;  counsel appeared to labor under an

irreconcilable conflict, as counsel was more concerrned about the cost of mounting a  defense

10

than he was with vigorous advocacy;

The grounds set forth in paragraph XVII hereof has not been previously raised in any court, state or federal, in any petition, motion, or application, and there are new facts on which the claims are based, which have not been previously presented to any court;

The petition is being presented in the first instance to this Court, under its original habeas corpus jurisdiction, pursuant to article VI sec. X of the California Constitution;

Petitioner has no alternative adequate remedy at law;

WHEREFORE, petitioner respectfully pray this Court:

1)      Take judicial notice of all records in the case of (People v. Tajiri Turner Jr., San Mateo County Superior Court No. SC082805A);

2)      Issue an Order to Show Cause , returnable before this Court, to inquire into the legality of petitioner's incarceration;

3)      Enter an order appointing counsel, upon order requiring the People to Show Cause why the relief prayed for should not be granted;

4)      After a full hearing, enter an order that the judgment of conviction as to the Verizon store robbry occuring on September 3, 2014, is set aside, and remand the matter before the trial court for appropriate disposition of attenuated charges and/or counts;

5)      Grant petitioner whatever further relief is appropriate and in the interest of justice;

DATED:                                        Respectfully  submitted,

11

Tajiri Turner Jr. AZ4881

C.S.P. Solano

P. O. Box 4000

Vacaville, CA 95696-4000

In Pro Per/

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT  1.

### NEWLY DISCOVERED EVIDENCE OF FACTUAL INNOCENCE
### REQUIRES REVERSAL OF CONVICTION AS TO VERIZON STORE
### ROBBERY ON SEPTEMBER 3, 2014

**The Sworn Statement of John Sanford**

**Constitutes Newly Discovered Evidence**

The post-trial affidavit of John Sanford, contradicting the identification of petitioner by Ms. Men, constitutes newly discovery evidence, and the basis upon which reversal of the robbery conviction is required.

Penal Code section 1473, subdivision (b)(3)(A) provides that a writ of jhabeas corpus should issue when "[n]ew evidence exists that is credible, material, presented without substantial delay, and of such decisive force and value that it would have more likely than not changed the outcome at trial."  New evidence is defined as "evidence that has been discovered after trial, that could not have been discovered prior to trial by the exercise of due diligence, and is admissible and not merely cumulative, corroborative, collateral, or impeaching." (Pen. Code sec. 1473, subd(b)(3)(B).)

13

The declaration of appellate counsel filed with the petition in the superior court, attesting that "On July 23, 20128, I received an unsolicited declaration dated July 18, 2018, from John Sanford, an inmate at the California State Prison Solano[CDC# BA6936]" wherein Mr. Sanford admits that he committed the robbery of the Verizon Store in San Mateo on September 3, 2014, and the trial attorney's communication with appellate counsel where he states that "Mr. Sanford's name had not previously been known to him" and that " Mr. Sanford's name [had] never been mentioned previously in connection with the case" would clearly bring the affidavit under the purview of newly discovered evidencve. Accordingly, with no factual dispute on those points, the issue before the Court becomes a question of law. The court must decise whether the affidavit of John Sanford "would have more likely than not changed the outcome at trial." (Pen. Code sec. 1473, subd. (b)(3)(A).)

A changed trial outcome means a result different from the guilty verdict Turner's jury returned. Significantly, that definition does not require an acquittal, but also encompasses a hung jury. (People v. Soojian(2010) 190 Cal. App. 4th 491, 521.) "More likely than not" means just that ---it is unnecessary to survey authorities or attempt to differently define that concept; it is already stated the most understandable way. Turner's burden in this habeas proceeding is to show it is more likely than not the new affidavit evidence would have led at least one juror to maintain a reasonable doubt of guilt.

Petitioner notes that the bar used to be considerably higher for a petition of this nature. Before the Legislature amended Penal Code section 1473 in 2016 to provide for habeas relief when new evidence more likely than not would have changed the trial outcome, a habeas petitioner proceeding on this ground had to show the new evidence pointed "'unerringly to

innocence'" and "undermine[d] the entire case of the prosecution." (In re Hall(1981) 30 Cal. 3d

408, 423.) That former standard required a petitioner to conclusively establish innocence.

(Ibid.) Habeas relief was thus previously reserved for those cases where newly discovered

evidence essentially on its own proved a petitioner did not commit the crime. The

amendment to Penal Code section 1473 changed that. A petitioner no longer has to prove

innocence but rather must show that the new evidence ------viewed in relation to the evidence

actually presented at trial ------would raise a reasonable doubt as to guilt. The statute creates a

sliding scale: in a case where the evidence of guilt presented at trial was overwhelming, only

the most compelling new evidence will provide a basis for habeas relief; on the other hand, if

the trial was close, the new evidence need not point so conclusively to innocence to tip the

scales in favor of the petitioner. The change in the law represents an overall lower tolerance for

wrongful convictions. The Legislature has chosen to more closely protect society's interest in

ensuring that a person convicted of a crime is the person who committed it.

### The Affidavit Evidence of John Sanford More Likely Than Not
### Would Have Changed The Trial Outcome

As petitioner has discussed, the relative strength required of new evidence depends on

how close the trial was. The posecution's theory of the case rested on the show up

identification, which petitioner has contended resulted from impermissively suggestive

procedures used by the police, without establishing an independent source for the

identification. The victim was told in advance of being transported to a location where the

petitioner had been detained by the police, that the suspect had been captured, and that she

was being taken there to identify him. (RT pp. 77-78.) The victim of course made the

15

identification as she had been informed the individual in police custody, Tajiri Turner, was the

perpetrator. ""[I]t is a matter of common experience that, once a witness has picked out the

accused at the line-up, he is not likely to go back on his word later on, so that in practice the

issue of identity may (in the absence of other relevant evidence ) for all practical purposes be

determined there and then, before trial.'" (United States v. Wade(1967) 388 U.S. 218, 229, fn. 8,

citing Williams and Hammelmann, Identification Practices, Part 1 (1963) Crim. L. Rev. 479, 482.)

The United States Supreme Court has held that a conviction must be reversed, because of the

lack of due process, where false eyewitness identification at trial followed a pretrial photo

identification procedure that was "so impermissively suggestive as to give rise to a very

substantial likelihood of irreparable misidentification." (Simmons v. United States(1968) 390

U.S. 377, 384; People v. Thomas(2012) 54 Cal. 4th 908, 931.) An identification procedure

violates due process where it is conducive to mistaken identification. (Stovall v. Denno(1967)

388 U.S. 293, 301-302.)

    The newly discovered evidence, when taken in light of the corrupt identification

procedure, is increasingly credible. Here we have what is clearly impermissively suggestive

procedures used by the police when the detective informed the victim that they had captured

the suspect and she was being transported to his location to identify him. (cf. Stovall v. Denno,

supra, 388 U.S. 293[ suggestive procedures include when the identifying witness knows all the

other participants in the lineup except the suspect, when the others are grossly dissimilar in

appearance from the suspect, when only the suspect is required to wear the distinctive clothing

allegedly worn by the culprit, when the police tell the witness that they have caught the

suspect after which the suspect is viewed alone, when the suspect is pointed out before or

- 16

during the procedure, when the participants are asked to try on clothing which only fits the
suspect or when an identification is made in the presence of other identifying witnesses.
(Emphasis added.)

The new evidence here is of such decisive force and value that it would have more likely
than not changed the outcome at trial. Eyewitness misidentification is widely acknowledged as
the "greatest cause of wrongful convictions." (State v. Henderson(2011) 208 N.J. 208,
231(Henderson).) In Henderson, the New Jersey Supreme Court conducted an extensive survey
of scientific studies of eyewitness identifications and memory. The court initiated and largely
adopted a Special Master's report that evaluated "scientific and other evidence about
eyewitness identifications. The Special Master presided over a hearing that probed testimony
by seven experts and produced more than 2,000 pages of transcripts along with hundreds of
scientific studies." (Id. at pp. 217-218.)

There are several "estimator variables" or factors peculiar to the circumstances of the
crime that can affect the reliability of witness identifications. (Henderson, supra, 208 N.J. at pp.
261-273.) These types of factors have long been taken into consideration in California courts
and include such things as the witness's degree of stress, the ability of the witnes to observe the
suspect, and the problems involved in cross-racial identifications. (Ibid., see also CAL CRIM No.
315[factors a jury can consider when evaluating eyewitness testimony].)

But more importantly, when it comes to due process considerations, there are "system
variables," which can also greatly affect the reliability of eyewitness identifications. These are
factors that are entirely within the control of law enforcement, such as how lineups are
constructed and how identification procedures are conducted. (Henderson, supra, 208 N.J. at

pp. 248-261.)

Here, Turner files a verified habeas corpus petition and attaches the affidavit of John Sanford as new evidence.  The new evidence is decisive,  in that Sanford is unequivocal that he not Tajiri Turner, committed the robbery of the Verizon store in San Mateo on September 3, 2014. A confession is like no other evidence. [Indeed, a confession is probably the most probative and damaging evidencde that can be admitted." (cf Arizona v. Fulminante(1991) 499 U.S. 279, 296)(quoting Bruton v. United States(1968) 391 U.S. 123, 139.)   Given that context, the ultimate question is whether the addition of Sanford's testimonial  evidence to Turner's trial would have produced a reasonable doubt in the mind of at least one juror.  We believe it would have.  In arriving at that conclusion, it is important to be clear about what the new evidence shows.   The affidavit of John Sanford shows that the impermissively suggestive police procedure not only produced a mistaken identification, it exposes that  false evidence  was introduced at trial against Turner.  The term  "false" evidence should not be understood to somehow mean "falsified" evidence or "fabricated" evidence. (See In re Hall, supra, 30 Cal. 3d at p. 424[issuance of writ of habeas corpus was justified on ground that identification testimony "was false, albeit unintentionally so"].)  A habeas petitioner is not required to show that false evidence was the result of perjury, or that prosecution or its agents were aware of the false nature of the evidence.  (Pen. Code sec. 1473, subd(c).)  Various dictionaries define the word "false" in different ways, but in the context of a habeas corpus claim,  "false " evidence most closely means that the evidence was "not geniuine."  (Webster's Collegiate Dict. (2007) p. 451, col. 1; compare  People v. Bamberg(2009) 175 Cal. App. 4th 618, 627.)

The false testimony clearly contributed to the verdict.  We could expect the testimony

18

to be excluded had trial counsel made the proper motion to suppress the identification. (See

Perry v. New Hampshire(2012) 565 U.S. 228, 238.) In particular, the Court has said that " due

process concerns arise only  when law enforcement officers use[d] an identification procedure

that is both suggestive and unnecessary. "  Id., atb 238-239(citing Manson v. Braithwaite(1977)

432 U.S. 98, 107, 109 , and Neil v. Biggers(1972) 409 U.S. 188, 198.)  To be "' impermissively

suggestive,'" the procedure must  "'give rise to a very substantial likelihood of irreparable

misidentification .' "  Id., at  197(quoting  Simmons v. United States(1968) 390 U.S. 377, 384.)

It is not enough that the procedures "may have in some respects fallen short of the ideal."  Id.,

at 385-386.   Even when an unnecessarily suggestive procedure was used, "suppression of the

resulting identification is not the inevitable consequence." (Perry, supra, 565 U.S. at 239.)

Instead,  "the Due Process Clause requires courts to assess, on a case-by-case basis, whether

improper police conduct created a 'substantial likelihood of misidentification.'" Ibid. (quoting

Biggers, supra,  at 201.)

     Here, Turner does not theorize nor is it speculative when he states that the police used

improper, unduly suggestive procedures when the detective while at the Verizon store with the

victim, received a radio transmission alerting him that a "suspect" was in custody, and the

detective in turn told the victim that the "suspect" had been captured, and that he was going to

take her to the location to identify the suspect. (RT pp. 76-77, 77-78.)   The new evidence,  a

confession from the actual perpetrator, is compelling evidence that the impermissively

suggestive procedures resulted in irreparable misidentification, as Turner is factually innocent

of the Verizon store robbery.

     Accordingly, petitioner urges the court to reverse his conviction on the Verizon store

19

robbery, and remand to the trial court for appropriate disposition of attentuated charges and/or counts.

### ARGUMENT 11.

### PETITIONER WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND TO A FAIR TRIAL AND RELIABLE DETERMINATION OF GUILT AND PENALTY BY TRIAL COUNMSEL'S INCO,MPETENCE

Petitioner's convictions and sentence of 144 years to life were unlawfully and unconstitutionally imposed in violation of Petitioner's rights to due process, to a fair trial, to confront witnesses, to compulsory process, to present a defense, to the effective assistance of counsel, and to accurate and reliable guilt and penalty determinations, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, and Article 1, Sections 1, 7, 13, 14, 15, 16, 17, 24 and 28 of the California Constitution, because Petitioner was denied the effective assistance of counsel throughout Petitioner's trial and in pre-trial proceedings.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, and only assistance assistance that is "effective" will pass constitutional muster. (McMann v. Richardson(1970) 397 U.S. 759, 771, n. 14.) A defendant's claim that his counsel's assistance was constitutionally defective is evaluated under a two-prong test. "First, the [petitioner] must show that counsel's performance was deficient . . . Second, the petitioner must show that the deficient performance prejudiced the defense." (Strickland v. Washington(1984) 466 U.S. 668, 687.)

Counsel is constitutionally deficient if the representation "fell below an objective

20

standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. When evaluating counsel's conduct, "we must make every effort 'to eliminate the distorting effects of hindsight, . . . and to evaluate the conduct from counsel's perspective at the time." (Gulbrandson v. Ryan(9th Cir. 2013) 738 F. 3d 976, 988) (quoting Strickland, supra, 466 U.S. at 687-88, 104 S.Ct. 2052).

A petitioner is prejudiced by counsel's performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Strickland, supra, 466 U.S. at 694, 104 S.Ct. 2052.) A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Id. Thus, a petitioner need not prove "counsel's action more likely than not altered the outcome," but rather he must demonstrate that "[t]he likelihood of a different result [is] substantial, not just conceivable." (Harrington v. Richter(2011) 562 U.S. 86, 131 S.Ct. 770, 791-792, 178 L.Ed. 2d 624.)

Here, petitioner discovered post-conviction that his trial counsel harbored ill-will, spite, and animus toward petitioner at the time of trial to such degree and depth that it compromised petitioner's defense. In a post-trial communication via email with petitioner's representative, trial counsel admitted that he interferred with post-conviction investigative efforts which petitioner launched through a local investigator to gather evidence for his post-conviction habeas corpus challenge to the judgment of conviction. (See Email from Gerritt Rutgers, hereto, exh.-C.) Petitioner had sought the assistance of counsel through his representative, and appointed appellate counsel was in contact with trial counsel which is how trial counsel became aware of petitioner's post-conviction efforts. (See Letter Dated December

21

5, 2017, hereto, exh.-F; see also Letter from Gerritt Rutgers, Dated December 27, 2019, hereto, exh.-G.)

It was disclosed that petitioner retained Stuart Kohler, a private investigator and that petitioner wanted his investigator to interview counsel. Specifically, petitioner sought an explanation of counsel in not making a pretrial challenge to the identification by the victim of the Verizon store robbery on September 3, 2014, on the ground the identification was tainted by the police use of impermissively suggestive procedures ( when the detective told the victim in advance that the suspect had been captutred and proceeded to take the victim to the location where the police had the petitioner detained and put him on display for the victim to identify.) (RT pp. 76-77, 77-78.)

Trial counsel refused to cooperate with petitioner's request for an interview. Instead, counsel took it upon himself to contact petitioner's investigator for the express purpose of dissuading him from taking the case. Counsel didn't think the $500 retainer paid to the investigator was sufficient for the work, and disclosed sensitive information which counsel was prohibited from disclosing pursuant to Business & Professions Code, section 6068, subd. (c)(1), in an effort to avoid having to offer an explanation of his acts or omissions in failing to challenge the suggestive identification procedures used by the police.

The evidence shows trial counsel unreasonably and prejudically failed to conduct a timely or adequate investigation, did not make informed and reasoned decisions regarding the presentation of the defense case, and did not adequately defend against the State's case. Reasonably competent counsel handling petitioner's trial would have known that the police use of suggestive identification procedures violates the defendant's rights to a fair trial. When a

lineup or showup is conducted in violation of the defendant's right to due process, an in-court

identification of the defendant will not be permitted unless the government can establish an

independant source. (Perry, supra, 565 U.S. at 239.) "The Due Process Clause requires courts

to assess, on a case-by-case basis, whether improper police conduct created a 'substantial

likelihood of misidentification.'" Ibid (quoting Biggers, supra, at 201). "Reliability [of the

eyewitness identification ] is the linchpin' of that evaluation." (Perry, supra, at 239(quoting

Manson, supra, 432  U.S. at 114.)

Counsel's omission deprived petitioner of adjudication of this crucial issue. We do not

have the declaration of trial counsel to explain his actions, efforts were made to secure said

declaration but counsel refused to cooperate.  Nevertheless, since counsel was or reasonably

should have been aware of  the crucial defense, counsel can have no plauisble tactical decision

for withdrawing that defense without a full development of the facts. (Baylor v. Estelle(9th Cir.

1996)  94 F. 3d 1321, 1324); Sims v. Livesay(6th Cir. 1992) 970 F. 2d 1575, 1580-1581.)

## Counsel's Omission Prejudiced Petitioner

"It is well established that convictions based on eyewitness identification at trial, after a

pretrial identification, constitute a denail of due process only if the pretrial  identification

procedure was so impermissively suggestive as to give rise to a very substantial likelihood of

irreparable misidentification. [Citation.]  A court must review the 'tpotality of the

circumstances ' in order to determine whether due process has been violated.  [Citation.]

Where  the challenge is to the fairness of the pretrial identification the burden is upon the

defendant to show that it was suggestive or unfair. [Citation.]  If the defendant sustains his

burden of showing the pretrial identification was suggestive,  the in-court identification will be

23

excluded unless the People can demonstrate that the in-court identification was otherwise reliable. [Citation.]" (People v. Johnson(1989) 210 Cal. App. 3d 316, 322-323.)

Counsel's omissions deprived Turner of the adjudication, and thus fair determination of the issue.

### The Police Manipulation of Evidence Constitutes The Use of False
### Evidence In Violation of Petitioner's Right to Due Process And
### A Fair Trial

The Due Process Clause of the Fifth and Fourteenth Amendments protects the accused from actions that violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." (United States v. Lovasco(1977) 431 U.S. 783, 790(citations omitted). The principle that the government "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction [is] implicit in any concept of ordered liberty . . . ." (Napue v. Illinois(1959) 360 U.S. 264, 270.) Accordingly, when the state wins a conviction based on false testimony, it turns a proceeding into a pretense of a trial," (Mooney v. Holohan(1935) 294 U.S. 103, 112,) and violates the core values embodied in the due process clause. Id. at 112-113; see also In re Winship(1970) 397 U.S. 358, 369)(Harlan J., concurring).

Supreme Court jurisprudence has consistently articulated the incompability of the knowing use of false evidence with due process. Fundamental fairness does not exist where state actors have "contrived a conviction through the pretense of a fair trial which in truth is but used as a means of depriving a defendant of liberty through deliberate deception of court and

24

jury by the presentation of testimony known to be prejured." (<u>Mooney v. Holohan</u>, supra, 294

U.S. 103, 112.)  Adhering to this principle in <u>Napue v. Illinois</u>, supra, 360 U.S. 264, 269-271, the

Supreme Court held [I]t is established that a conviction obtained through the use of false

evidence, known to be such by representativesnof the State, must fall under the Fourteenth

Amendment. . . The same result obtains when the State, although not soliciting false evidence,

allows to go uncorrected when it appears.

      The term "false" evidence should not be understood to shomehow mean "falsified"

evidence or "fabricated" evidence. (See <u>In re Hall</u>(1981) 30 Cal. 3d 408, 424[issuance of a writ of

habeas corpus was justified on grounds that identification testimony "was false, albeit

unintentionally so"].)  A habeas petitioner is not required to show that false evidence was the

result of perjury, or that prosecution or its agents were aware of the false nature of the

evidence. (Pen. Code sec. 1473, subd(c).)  Various dictionaries define the word "false" in

different  ways, but in the context of a habeas corpus claim, "false" evidence most closely

means that the evidence was "not genuine." (Webster's 11th Collegiate Dict. (2007) p. 451, col.

1; compare <u>People v. Bamberg</u>(2009) 175 Cal. App. 4th 618, 627.)

      The testimony of Officer Chamberlain  is unequivocal that she  staged the evidence

when taking pictures of the vehicle keys in the ignition. (RT pp. 1751-1754.)  The vehicle keys

were left under the front passenver seat by John Sanford when he abandoned the vehicle in the

alleyway. (See Declaration of John Sanford, paragraph 4, hereto, exh.-A.)  The keys were

retrieved by the petitioner when he went to get the vehicle. The keys were in petitioner's

possession when the police chased him, and when they caught him. (See San Mateo Police

Department Report dated 09/03/2014, hereto, exh.-G .)   The staged evidence created  the

false impression that Petitioner Tariji Turner was apprehended when he returned to retrieve

the vehicle which according to the police, contained the incriminating evidence(the

cellphones). The Officer testified that she emptied a duffle bag of its contents so that he could

take a picture of the cellphones which were allegedly in the duffle bag. (RT pp. 1751-1752.)

The Officer additionally testified that she took a picture of a pair shoes, hat, and pants which he

believed were found underneath the duffle bag. (RT pp. 1752-1753.) But there were no

pictures taken to document the original state or condition in which the evidence was found or

the location of the evidence in the vehicle when it was originally discovered. (RT pp. 1753,

1754.) Officer Chamnberlain was not the person who discovered the items at the scene where

the vehicle was located, but took pictures of the evidence after the vehicle was towed to the

police holding yard. (RT p. 1753.)

### The False Evidence Was Material

Materiality under Napue requires a "lesser showing of harm . . . than under ordinary

harmless error review." (Dow v. Virga(9th Cir. 2003) 729 F. 3d 1041, 1048.) After weighing the

effect of alleged Napue violations, see Phillips v. Ornosk( 9th Cir. 2012) 1168, 1189, there stills

needs to be a "reasonable likelihood that the false testimony could have affected the judgment

of the jury." (Hayes v. Brown(9th Cir. 2003) 399 F. 3d 972, 985.)

Here, the false evidence is substantially material as it was planted evidence. Planted

evidence is evidence that has been changed, or established at a scene, to make it appear as

related to the accused party. For example, here , there were convieniently no pictures taken of

the interior of the vehicle to preserve the original appearance of the inside of the vehicle before

it was towed to the police holding yard. We do not know how the evidence appeared when it

26

was allegedly found or from Officer Chamnberlain's testimony, who actually discovered the evidence. (RT pp. 1752-1754.)

The fact that the evidence is planted is supported by the lack of any pictures taken of the evidence in its original state before it was staged. Moreover, The confession of John Sanford refutes the testimony of Officer Chamnberlain that the duffle bag was left on the rear deck of the hatchback. ( See Affidavit of John Sanford, paragraph 4, hereto, exh.-A.)

Officer Chamberlain's testimony that she staged the evidence to document its removal from the vehicle is challenged by the omission of any pictures taken of the evidence in the condition in which its was allegedly discovered. Officer Chamberlain testified that he used a digital camera ("Its a camera used for all investigations"), and could have easily preserved a sequential series of pictures or video film recording each item of evidence, and the sequence of steps taken with each item of evidence.

In the absence of a digital recording, we are asked to accept what amounts to tampering or planting evidence as normal police business. Tampering or Planting Evidence, also referred to as Evidence Tampering, is the illegal act of changing , hiding, moving, planting, placing, or fabricating any record, document, or object with the intent to impair its validity or availability in a trial (criminal or civil ), criminal investigation or official proceeding.

For these reasons, the testimony that Officer Chamberlain "staged" the evidence is substantially material, and under the circumstances deprived Petitioner of a fair trial. Accordingly, Petitioner's conviction should be reversed, and the matter remanded for a new trial.

25

DATED:                                      Respectfully submitted,


                                       Tajiri Turner Jr. AZ4881

                                       C.S.P. Solano

                                       P. O. Box 4000

                                       Vacaville,  CA  95696-4000

## PROOF OF SERVICE BY MAIL

I, <u>Tajiri Turner jr.,</u> am a resident of Vacaville, California. I am over eighteen years of age, and am/not a party of the entitled action. My mailing address is: CSO Solano P. O. Box 4000, Vacaville, CA 95696-4000.

On ___8/25/20___ , I SERVED THE FOREGOING:

<u>PETITION FOR WRIT OF HABEAS CORPUS</u> _____

( Set Forth Exact Title of Document Served )

On the party(s) served herein by placing a true copy thereof, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States Mail by delivery to California State Prison aolano, Vacaville, California.

Clerk of the Court, U.S. Dist. Court, 450 Golden Gate Ave., Box 36060

San Francisco, Ca 94102-3489

I declare under penalty of perjury the foregoing is true and correct

DATED __8/25/20__          _____

1